## Miller et ux. (to use, Appellant) *v.* Michael Morris, Inc., et al.

114

Argued October 1, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*James E. Marshall,* with him *Leonard M. S. Morris, Marshall & Marshall* and *Sachs· & Caplan,* for appellant.

*Lee C. McCandless,* with him *William A. Watson,* for appellees.

OPINION BY MR. CHIEF JUSTICE MAXEY, January 3, 1949:

This is an appeal from an order striking from the record a judgment entered in an amicable action of

ejectment on a lease and an assignment thereof in favor of Darling McKeesport Corporation and against Michael Morris, Inc. (hereinafter called Morris Company), Robert Morris, individually and trading and doing business as Robert Morris and Company (hereinafter called Robert Morris), and William Beatus, Inc. (hereinafter called Beatus).

Dr. J. J. Schultis et al., as the owners of a parcel of land in the City of Butler, leased the land to Sam H. Miller et ux., on May 26, 1941. This lease provided that the tenants were to erect a substantial brick and steel business building on the demised land, the entire cost of which was to be paid by the lessees. The lease gave the tenants the right to assign it or to sublet the building or any part thereof.

Pursuant to the provisions of subletting in the lease of May 26, 1941, the Millers sublet by written lease dated June 4, 1942, one of the two storerooms to Beatus, for a period of ten years. This lease provided that "the lessee . . . agreed not to . . . sub-let the same or any part thereof without the written consent of the lessors . . .", and contained the usual conditions of default among which were the adjudication of insolvency or bankruptcy of the tenants or a general assignment for the benefit of creditors by the tenants. In the event of such defaults the lessors were given the right to terminate the lease, with a warrant of attorney confessing judgment in ejectment "in favor of the lessors, their heirs, devisees, executors, administrators, and *assigns* as of any term . . .", to obtain possession.

Beatus wished to assign its lease to Morris Company, but it required the written permission of the Millers, its lessors. On March 18, 1946, the Millers entered into a written agreement with Beatus, its lessees, and the Morris Company, and Robert Morris, wherein the Millers consented to the assignment of the lease of June 4, 1942, "for the balance of the term of said lease, upon the express agreement that it is only for this one specific assign-

ment and retaining the restrictive covenant in the original lease as to any other assignment, and also upon the express agreement that the" other three parties to the agreement, "are not only bound by this agreement but by all the terms of the original lease."

Beatus, in this agreement, then assigned its lease to Morris Company, and the latter agreed to strictly "perform each and every covenant to be performed" by Beatus, "lessee, to the original lease agreement dated June 4, 1942, and to be bound thereunder . . . as if actually the original lessee in said lease." In the same agreement, and as part of the consideration therefor, Robert Morris guaranteed a strict and punctual performance of the terms of the lease by the assignee-lessee, Morris Company. Both the assignment and the guarantee in the agreement provided "that the insolvency, bankruptcy, or receivership of" Morris Company, the assignee-lessee, or Robert Morris, the guarantor, "will constitute a default in this agreement and under the terms of the original lease. . . ." The agreement further provided for a warrant of attorney to confess judgment in ejectment for the possession of the premises "on failure of" Beatus, Morris Company and Robert Morris ". . . to keep all the covenants of the original lease and this agreement. . . ."

The Millers then, on September 9, 1946, by written assignment, transferred to the Thrift Drug Company not only their interest in the first lease of May 26, 1941, for the building and two stores, but also assigned their lease of June 4, 1942 with Beatus and their agreement of assignment and guarantee of March 18, 1946 with Beatus, Morris Company and Robert Morris.

On March 18, 1947, the Thrift Drug Company assigned all these interests to Darling McKeesport Corporation.

On June 10, 1947, Sam H. and Florence R. Miller, now for use of Thrift Drug Company of Pennsylvania, now for use of Darling McKeesport Corporation by vir-

tue of the power of attorney in the assignment and guarantor agreement confessed judgment in an amicable action of ejectment against the defendants upon its affidavit of default, alleging that Morris Company and/or its guarantor, Robert Morris, had applied to their creditors through the New York Credit Adjustment Bureau, Inc., for an arrangement, and that they were insolvent. This was amended to show additional insolvency of Robert Morris, guarantor in the assignment and agreement dated March 18, 1946. The amendment charged that Robert Morris, without the knowledge or consent of the plaintiff or its predecessors in interest, transferred to Robert Morris Stores Corporation all of his assets and property, thereby divesting himself of all of his assets and rendering himself insolvent and depriving the plaintiff of an effective guarantee by the said Robert Morris under the agreement.

The defendants made a motion to strike off the judgment in ejectment for these four reasons:

1. That the judgment was not filed in the name of the real party in interest.

2. That the power to confess judgment is a personal one and does not run with the land.

3. That the terms of the agreement gave an election to Sam H. Miller et ux. to collect the balance of the rent for the entire term but did not authorize the revoking of the lease or the right to confess judgment thereon.

4. That no breach of the lease had been shown by the pleadings.

The Court below granted the motion upon the grounds that the "mere allegation" of insolvency was not sufficient to enforce the forfeiture of the lease, and "to allow this defendant's business to be interfered with in the manner proposed, perhaps destroyed on the facts presented here would amount to an unconscionable use of power." This appeal followed.

Under rule 2002 of the Rules of Civil Procedure, the judgment should have been entered in the name of the

real party in interest, the Darling McKeesport Corporation. This rule is mandatory and the lower courts have properly enforced this rule in many instances. Under the circumstances of this case, however, the Court below properly permitted the "amendment to the pleadings to conform with the provisions of this rule." We will treat it as if it was amended and as if the judgment was so entered.

On the defendant's second contention, we must hold that while authority to confess a judgment cannot operate in favor of a stranger to the contract, a covenant providing a warrant of attorney for entering an amicable action of ejectment for possession inures to the benefit of the assignee. The foundation of this right is found in The Statute of 32 Henry VIII, ch. 34, which is in force in Pennsylvania. (*Williams et al. v. Notopolos*, 259 Pa. 469.) This Statute, after reciting that by common law no stranger to any covenant could take advantage thereof but only such as were parties thereunto, enacts that grantees or assignees of the reversion, or assignees of lessors, shall enjoy the same benefits and remedies which the lessors or grantors themselves had or enjoyed for the breach of any condition, covenant or agreement contained or expressed in leases or grants.

In *Testa v. Lally et ux.*, 161 Pa. Superior Ct. 478, it was held that generally an assignee of a lease may properly exercise the warrant of attorney to confess judgment contained in the lease. It was set forth in the lease in that case that the lessor and the lessee covenanted "for themselves, their respective heirs and successors or assigns." *

---

* In the case now before us it was provided in the lease of May 26, 1941 that judgment in an amicable action of ejectment might be confessed "in favor of the lessors, or those claiming under the lessors, and against the lessees and those claiming under the lessees". In the last paragraph of the lease it is provided: "That the agreements, conditions, covenants or terms herein contained, shall, in every case, apply to, be binding upon and inure to the benefit of the respective

The interest of the plaintiff here is set forth in the amicable action, and. the leases as incorporated therein bear the formal assignments to the plaintiffs, Darling McKeesport Corporation, making them the real parties in interest.

This case vitally differs from that of *Fogerty v. Dix*, 75 Pa. Superior Ct. 214, 217, where ". . . the power to enter judgment against appellant was conferred upon the lessor and *not* upon the lessor and *his assigns*. . . ." In that case Judge LINN said: ". . . The lessor and lessee were of course competent to agree that in the event. of the lessee's default, judgment might be entered against him therefor by the lessor, or by the lessor and his assigns generally, or by the lessor and his assigns in particular circumstances, and their intention in this regard as stated in the lease should be carried into effect. . . . The invalidity of the judgment therefore appears on the face of the record."

In the *Fogerty* case, the lease disclosed the intention to limit the power of the confession of a judgment to an assignee who was the owner of the premises. It provided that the lessor had the right to assign the lease in case the demised premises shall be sold and conveyed by the lessor during the term, and the lessor did not convey the premises during the term but assigned the lease.

In the instant case, the Millers, in the original lease with Dr. J. J. Schultis et al., were "given the right to assign this lease, *or any estate or interest therein*, without the consent of the lessors". In the lease between the Millers and Beatus of June 4, 1942, the lessee confessed judgment "in favor of the lessors, their heirs, devisees, executors, administrators, *and assigns* as of any term." The lessor is not only authorized here to enter judgment in the event of a default but that power was specifically

parties· hereto and of their respective heirs, executors, administrators and assigns, with the same force and effect as if specifically mentioned in each instance where a party hereto is named.

extended and passed to the lessors' assignee, in this case, the Darling McKeesport Company. In the assignment and the guarantor agreement of March 18, 1946, the consent to the assignment of the lease from Beatus to the Morris Company and Robert Morris was "upon the express agreement" that Beatus, the lessee, the Morris Company, assignee, and Robert Morris, guarantor, "are not only bound by this agreement but *by all the terms of the original lease*" of June 4, 1942. It was also provided "that the insolvency, bankruptcy, or receivership, or any of them will" constitute *a default in this agreement and under the terms of the original lease,* and that the entire rent for the balance of the term will immediately fall due and be collected, *"together with the possession of the premises."* Under the agreements the appellant had the power to enter judgment in an amicable action of ejectment.

The Court below correctly concluded that "the language used in this lease clearly indicates that the parties contemplated that insolvency, an assignment for the benefit of creditors, bankruptcy, appointment of a Receiver, would constitute a violation of the terms of the contract and authorize the entry of a judgment in an amicable action of ejectment". But the Court struck off the judgment, saying: "Insolvency is a fact and must be proven as any other fact. We may not take a mere allegation nor may we assume that a mere financial difficulty imports insolvency, 'the proof of the happening of the event on which the right (of forfeiture) depends must be clear and the result of enforcing the forfeiture must not be unconscionable'. . . . To allow this defendant's business to be interfered with in the manner proposed, perhaps destroyed, on the facts presented here would amount to an unconscionable use of power."

This statement is inapposite to the issue here, for no attack was made by the defendants upon the regularity of the entry of the judgment or upon the correctness of the averments in the affidavit of default. The controlling

principle is stated in *Spiese v. Shee*, 250 Pa. 399, 95 A. 555, to wit: "The distinction between striking off and opening a judgment is clear and well settled. It can be stricken off only for irregularity appearing upon the face of the record. Relief from it, when regularly entered, and upon which no process has been issued, if the defendant is entitled to relief, must come through a motion or petition to open it, such motion or petition being an appeal to the equitable power of the court to let the defendant into a defense: O'Hara v. Baum, 82 Pa. 416; North & Company v. Yorke, 174 Pa. 349; Davidson v. Miller, 204 Pa. 223; Lawrence v. Smith, 215 Pa. 534; Johnson v. Royal Insurance Co. of Liverpool, 218 Pa. 423." In the recent case of *McConnell v. Bowden*, 352 Pa. 48, 41 A. 2d 849, we held that when there is no irregularity on the face of the record, it is error to strike off the judgment, and that "equitable relief in such circumstances is worked out through the practice of opening the judgment." In *Bowman v. Berkey*, 259 Pa. 327, 103 A. 49, we pointed out the difference between a petition to open a judgment and a petition to strike off a judgment. There we held that the dismissal of a previous rule to strike off a judgment is not res adjudicata when a petition is filed to open the same judgment. We also held that "while it is true the court might have treated the rule as one to open judgment and proceeded accordingly . . . it was not bound to do so, and, in absence of a motion to amend made by defendant, the rule was properly discharged, and such order is not in any sense a decision on the merits pleadable in bar of the present proceedings."

If the defendants are able to sustain a challenge to the insolvency averred when this judgment was entered, that issue can be raised and decided in proceedings on a petition to open the judgment.

The order appealed from is reversed. Costs to be paid by the appellee.