National Forge Company, Appellant, *v.* Carlson.

Argued April 27, 1973. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*William F. Clinger, Jr.,* with him *Harper & Clinger,* for appellant.

*H. Robert Hampson,* with him *Hampson & Hampson,* for appellees.

OPINION BY MR. JUSTICE O'BRIEN, July 2, 1973:

This appeal arises from a final decree in equity entered by the Court of Common Pleas of Warren County. The facts are as follows:

On February 1, 1963, the commissioners of Warren County, as trustees of the Rouse Estate, executed an oil and gas lease covering 650 acres situate in Brokenstraw Township and Youngsville Borough to M. E. Freeman and R. L. Cotton, doing business as Freeman and Cotton. Subsequently, the lease was assigned twice —first, to Oscar W. Hogsett and then, on December 12, 1969, from Hogsett to A. W. Carlson, A. W. Hughes, G. R. Christensen and E. J. Sullivan, trading as Iroquois Trust (Iroquois), appellees herein. The lease and the two assignments were duly recorded.

The lease carried a restricted drilling clause providing, *inter alia,* that no wells were to be drilled on premises which "lies northerly of U. S. Traffic Route No. 6 and southerly of the Brokenstraw Creek."

On October 14, 1968, the trustees of the Rouse Estate sold to National Forge (Forge), appellant herein, 16 acres of the 650-acre tract, subject, nevertheless, to any outstanding oil and gas leases and to any rights of way or easements of record or visible on the ground. Part of this 16-acre parcel is within the restricted drilling area.

At this time, Forge owned other premises easterly and contiguous to the 650-acre tract.

The parties came into conflict in October, 1971, when Iroquois commenced drilling operations on Forge's land. Prior to that time, Iroquois had drilled twenty-five wells on other parcels, which were similarly restricted, without objection from the then-owners, the trustees of the Rouse Estate.

When Iroquois commenced drilling operations on October 4, 1971, Forge advised Iroquois that it was operating in the restricted area. However, on October 28, 1971, the parties executed a royalty agreement with Quaker State Refining Co., allocating 1/8 royalty to Forge and 7/8 working interest to Iroquois. From October 4, 1971, to December 28, 1971, Forge drilled four wells on the 16-acre tract and within the restricted area at a cost of approximately $8,700 per well. Forge had thus far received a royalty payment of approximately $3,400 for oil from land for which it had originally paid $3,500.

On March 2, 1972, Forge filed a complaint in equity seeking a preliminary injunction to prevent further operation of the wells on the 16-acre tract and to compel Iroquois to account for all proceeds derived from the sale of the oil and to compel Iroquois to remove all of its machinery and equipment from Forge's property. The request for a preliminary injunction was denied. A final hearing on the complaint was held and the chancellor issued the following decree nisi:

"And Now, to-wit, this 14th day of July, 1972, the Plaintiff's demand to enjoin Defendants from further operations of the four wells in the restricted area is denied.

"Defendants may continue production of the four wells and must produce same with diligence and dispatch and maintain them in good condition at all times.

"Defendants are directed to repair any damage to the surface of the access road they are now using and are limited to its use.

"Defendants are enjoined from drilling any further wells within the restricted area and upon the wells reaching a non-paying quantity production each well is to be pulled and properly plugged in accordance with State Law.

"Defendants shall cooperate with Plaintiff in the event Plaintiff constructs an access road to this portion of the property or builds a structure thereon by moving oil lines or burying same where necessary." The exceptions were denied and final decree was entered on August 15, 1972, affirming the decree nisi. This appeal followed.

Forge first alleges and we agree that the chancellor committed error when he found that the purchase of the 16-acre tract of land by Forge in fee simple abrogated the drilling restrictions imposed by the original owner of the property in the lease which Iroquois acquired by assignment. When Forge purchased the property from the commissioners of the Rouse Estate on October 14, 1968, the deed contained the provision that the land was subject to the lease of Iroquois and further stated that the tenant was restricted from drilling in the 16-acre tract covered by the deed from the commissioners to Forge. Thus, the clear language of the deed to Forge indicated that the property was being sold subject to the lease and all the rights and liabilities that pertained to said lease. When land is sold by the original lessor, the purchaser of the land steps into the shoes of the original lessor and can enforce such restrictions as against an assignee of the original lessee. *Miller v. Michael Morris, Inc.,* 361 Pa. 113, 63 A. 2d 44 (1949); *Williams v. Notopolos,* 259 Pa. 469, 103 A. 290 (1918).

However, the chancellor found an additional reason for denying the relief sought by Forge. He found that the actions taken by Forge estopped it from enjoining the further operation of the wells in question. We agree. On October 28, 1971, Forge entered into a royalty division agreement with Iroquois, and from October 4, 1971, to December 28, 1971, Iroquois drilled the four wells in question in the restricted area. Forge received approximately $3,400 in royalty payments during the period preceding the commencement of the law suit. While Forge alleges it was unaware of these drilling operations, its receipt of the royalty payments refutes this contention. Therefore, the actions of Forge have created a situation where estoppel bars its attempt to enjoin Iroquois. In *Sabino v. Junio,* 441 Pa. 222, 225, 272 A. 2d 508 (1971), we defined the elements of estoppel as follows: "The essential elements of estoppel are an inducement by the party sought to be estopped . . . to the party who asserts the estoppel . . . to believe certain facts to exist—and the party asserting the estoppel *acts in reliance on that belief.*" (Emphasis in original.)

Considering that Iroquois expended some $8,700 per well during the period from October 4, 1971, to December 28, 1971, to drill the four wells in question, this coupled with Forge's receipt of the royalty payments certainly created a situation where estoppel exists to bar the appellants' request for relief.

Forge finally alleges that the chancellor committed error when he allowed Iroquois to use a right of way over Forge's land to gain access to their oil wells. Forge argues that Iroquois failed to establish an easement by necessity under the law as stated in *Ogden v. Grove,* 38 Pa. 487 (1861). However, when Forge and Iroquois entered into the royalty agreement, Iroquois was already using the road in question. Consequently, Forge is estopped from claiming that Iroquois has no right

to use the road to operate the wells which are the subject of that agreement.

Decree affirmed. Each party to bear own costs.