Greek Catholic Congregation of the Borough of Olyphant, Appellant, v. Plummer, Exrx., et al.

Argued April 13. 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*Walter L. Hill,* of *O'Malley, Hill, Harris & Harris,* for appellant.

*William J. Fitzgerald,* of *Kelly, Fitzgerald & Kelly,* for appellees.

OPINION BY MR. CHIEF JUSTICE MAXEY, May 10, 1943:

This action of assumpsit for money alleged to be "justly due by the defendants to the plaintiff by reason of the defendants' receiving money" which plaintiff claims the defendants "owed to the plaintiff the duty of collecting from the Wilson Coal Company" arises from the situation set forth in our opinion in the case between the same parties, reported in 338 Pa. 373, hereinafter referred to as Case No. 2. (There was also an earlier case relating to the same coal lands, to wit, *Greek Catholic Congregation of Olyphant v. Wilson Coal Co.,* 329 Pa. 341, 198 A. 41, hereinafter referred to as Case No. 1.) This case, No. 3, is an appeal from the judgment entered against the plaintiff in favor of the defendants for want of a sufficient answer to new matter in the affidavit of defense. As new matter defendants pleaded that plaintiff brought an action in trespass against defendants in the Court of Common Pleas of Lackawanna County based on this same quit-claim deed wherein the judgment entered for the defendants was affirmed by the Supreme Court (i. e. Case No. 2). Therein it was decided that one who in good faith executes a quit-claim deed is not liable for trespasses committed by his grantee on the property subject to the deed after it is established that the grantor held no title to the property quit-claimed.

Now plaintiff contends that even though the defendant is not liable to it in *trespass* for the Wilson Coal Company's mining of plaintiff's coal after that company received a lease on that coal which we held to be in legal effect a quit-claim deed for such coal, it is liable to it in an action of *assumpsit* for the recovery of the amount Wilson Coal Company paid the defendant as royalties for the coal the defendant quit-claimed.

This contention must be rejected. As we said in our opinion in Case No. 2: "The distinguishing characteristic of a quit-claim deed is that it is a conveyance of the

interest or title of the grantor in and to the property described, rather than of the property itself": 16 Am. Juris. p. 560, Sec. 269.

Plaintiff says that it "bases its claim in this case on the plain and simple proposition that the defendants having no right in the coal have no right to keep the proceeds of its destruction". Plaintiff cites the following from the Restatement of the Law of Restitution, Chapter 1, Sec. 1: "A person who has been unjustly enriched at the expense of another is required to make restitution to the other".

The doctrine of unjust enrichment is inapplicable to this case. Sec. 3 of the Restatement of the Restitution says that "a person is not permitted to profit by his own wrong at the expense of another". The important word to be noted in this Restatement is the word "wrong". In every case of "unjust enrichment" the courts have been able to point out some wrong done by the party enriched. By "wrong" is meant, of course, the violation of another's legal right. A legal right is a personal interest or claim which society so far recognized as to be willing to enforce it. When C quit-claims to B C's right, title and interest in, for example, an apple orchard, for a consideration, and it later is established that C had no legal title to that orchard but that it belonged to A, the latter can recover from B the value of the apples B took from that orchard, but he cannot recover from C the amount which B paid to C for quit-claiming to B his "right, title and interest" in that orchard. It is settled that for one to quit-claim to another his interest in the property is not an incitement to that other to trespass upon the property to which he has no valid claim. One who receives a quit-claim deed to a property must proceed with caution if he seeks to possess himself of that property. By securing a quit-claim deed he has eliminated only one person who might bar his ingress to that property. A quit-claim deed contains no covenant of peaceful possession. One quit-claiming his interest in a

property is creating no liability against himself and the real owner of that property: See *Power* v. *Foley,* Newfoundland Reports, 1897-1903, p. 540; *England* v. *Cowley,* L. R. 8 Ex. 126; and *Owen* v. *Legh,* 3 B. & Ald. 470.

All this defendant did in respect to plaintiff's coal was to say to the Wilson Coal Company by giving it a quit-claim deed: "I have a certain claim on that coal; my title to the coal may fail and if you mine the coal you must assume the entire responsibility . . . without any liability in me under any circumstances whatsoever". (See p. 376 of Opinion in Case No. 2, supra.)

That these defendants acted in good faith when it sold the Wilson Coal Company its "interest" in this coal is evidenced by the fact that it required litigation and a judicial decision to determine that Samuel Callender, who in 1828 leased this coal for 100 years to Thomas Meredith did *not* die seized of a reversionary interest in it. We said in our opinion in Case No. 1, supra, at 343: "It must be conceded that if Samuel Callender died seized of a reversionary interest in the coal in question, the defendant is now lawfully entitled to mine and remove it," under the quit-claim deed it obtained in 1931 from Emma A. Plummer, Exrx., after the expiration of the 100 year lease referred to.

Appellant argues as follows: "The fact alleged by the plaintiff in the case at bar is that the defendants collected and received money for which they gave nothing at all, and that money rightfully should have gone to the plaintiff, and because it should have gone to the plaintiff the defendants have no right to keep it. They have no title to the money, any more than a person has title to a check that is in fact payable to another person having the same name as his. The check is not his even though delivered to him by someone who supposes he is entitled to it. As proceeds of the destruction of the plaintiff's coal did not rightfully belong to the defendants when they got it, it does not belong to them now."

The errors in that reasoning are in the statements that the defendants received money "for which they gave

nothing at all" and received "proceeds not rightfully belonging" to her. The defendant did give something which she honestly believed had value, and whether or not it had value is immaterial in this controversy. The contract was *lawful* and the proceeds the defendant received constituted the consideration named therein. Defendant might legally have received for quit-claiming her interest, one dollar or one thousand dollars. Whatever she received, the law permits her to retain. If the defendant had been paid $12,736. for her quit-claim deed the day she executed it, and if the Wilson Coal Company had been enjoined immediately thereafter from mining this coal, this defendant could have kept that money against the claim of *either* the plaintiff *or* the coal company, unless she was guilty of a fraud, and no allegation of a fraud is made. As we pointed out in Case No. 2, at p. 376, both parties (i. e. this defendant and Emma Plummer, Executrix) "understood that the question of Lessors' title was in dispute" when the lease of May 1, 1931, was made. Any time the Company's mining had been stopped by this plaintiff the payments to this defendant would have instantly ended.

Appellant's check analogue is not apposite. A person who receives and cashes a check that "is in fact payable to another" has, of course, no right to keep the proceeds, for he who signed the check and thus ordered the bank to pay a certain sum of money out of his account did not designate anyone other than the payee to cash it, and anyone else who posed as the payee and appropriated the proceeds after endorsing the check would be guilty of the crime of obtaining money by false pretences and forgery. When the Coal Company paid this defendant for the coal it had mined, it did only what it had agreed to do, and the defendant did no wrong in accepting the sum bargained for.

When the Coal Company began taking plaintiff's coal the law would have protected that property if plaintiff had invoked its aid. After the Company took the coal

plaintiff had a good cause of action against it, as we decided in Case No. 1, supra. If the Company had been solvent, plaintiff would have recovered on its judgment and would not now be here as a suitor. Since defendant did receive a substantial sum of money for quit-claiming her interest in coal to which she had no legal title, it would be a commendable recognition of a moral claim if she turned over to the plaintiff the money she so received, but no law or principle of law compels her to do so. There are many *moral* claims which society refuses to enforce, thus denying them the status of *legal* claims. Plaintiff's claim is one of them.

The judgment is affirmed.