449 A.2d 652

**BITO BUCKS IN POTTER, INC.**

v.

**NATIONAL FUEL GAS SUPPLY CORP., Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 27, 1981.

Filed Aug. 13, 1982.

Daniel F. Glassmire, Coudersport, for appellant.

D. Bruce Cahilly, Coudersport, for appellee.

Before CAVANAUGH, JOHNSON and LIPEZ, JJ.

CAVANAUGH, Judge:

This is an appeal from a decree of the Court of Common Pleas of Potter County, sitting in equity, which determined the rights of the respective parties under a right of way agreement over certain private land. The propriety of such determination is now before us.

The facts are as follows. In April of 1973, Richard Way was employed by the appellant, National Fuel Gas Supply Company (National), to gain the necessary right-of-ways and easements over seven miles of private lands in order to lay its proposed pipeline. Mr. Way initiated negotiations with Penn Valley Resorts, Incorporated (Penn Valley), appellee's predecessor in title, to obtain a right-of-way and easement across Penn Valley's land. During these negotiations, Penn Valley was represented by its corporate president and largest stockholder, Edward Clancy. On April 18, 1973, Mr. Clancy signed, as witnessed by William J. Mullins, Jr., corporate secretary, the following "Right of Way and Easement":

FOR AND IN CONSIDERATION of One and no/100 (1.00) Dollars to it in hand paid the receipt of which is hereby acknowledged, Penn Valley Resorts, Inc., . . . does hereby grant to the Sylvania Corporation, . . . its successors and assigns, a permanent, exclusive right of way and easement, for the laying, maintaining, operating, replacing, altering, changing the size, relocating and moving, at any time and from time to time, of one or more pipe lines . . . together with the right of unimpaired access to said pipeline and the right of ingress and egress on, over, and through Grantor's above described land for any and all purposes necessary and incident to the exercise by said Grantee of the rights granted hereunder, . . .

The right of way and easement shall be Sixty-six (66) feet in width. Grantor covenants and agrees that it will not impound water or construct buildings or structures of any type whatsoever on the above-described right of way strip. This shall be a covenant running with the land and shall be binding on Grantor, its heirs and assigns.

In addition to the above consideration, Grantee agrees to repair or to pay any actual damages which may be done. . .

If the Grantee exercises the right herein granted, it shall pay the Grantor as additional consideration for the grant hereunder the sum of Nine & 50/100 Dollars for

each rod length of the first pipeline and a like additional consideration for each rod length of each additional pipeline from time to time laid pursuant hereto, and the Grantee to pay such additional consideration in lieu of any vendor's lien in respect thereto. In case no pipe is laid thereon and/or such payment per rod is not made within two years from the date thereof, this grant shall thereupon cease and determine. . . .

Within two years, on October 3, 1974, National, through its subsidiary, Sylvania, paid One thousand six hundred and ninety-one (1,691.00) dollars to Penn Valley under the terms of the right of way and easement agreement. In August, 1976, appellee's agents inspected the Penn Valley tract, prospective to its acquisition. In September, 1976, appellant's surveyors staked out the Penn Valley tract easement. On December 28, 1976, appellee, Bito Bucks in Potter, Inc., (Bito Bucks) acquired by deed a portion of the Penn Valley tract subject to the right of way and easement dated April 18, 1973.

Following the receipt of a thirty day notice of entry from National, Bito Bucks filed an action in equity for an injunction to permanently enjoin National from entering appellee's land to construct a pipeline because an ambiguous forfeiture clause terminated its right of way and easement.

In case no pipe is laid thereon and/or such payment per rod is not made within two years from the date hereof, this grant shall thereupon cease and determine.

The lower court agreed with appellee that the forfeiture clause was ambiguous. After a full evidentiary hearing, the lower court held that, although the appellant proved through his witnesses that each of the parties to the right of way and easement agreement held the same mutual understanding that the forfeiture clause requires National to either lay the pipeline or pay the roddage within two years, the subjective intent of the parties required that National lay the pipeline and pay the roddage within two years of the agreement. Thus the lower court granted the permanent injunction and this appeal followed.

Appellant contends that the evidence of the discussions prior to and at the execution of the right of way and easement agreement and the subsequent conduct of the parties, demonstrate that the roddage payment of $1,691.00 perfected a perpetual easement in National and failure to lay the pipeline within two years did not cause a forfeiture of National's easement rights. We agree and thus reverse the order of the lower court.

It is settled that the same rules of construction apply to deeds granting easements as to contracts generally. *Sigal v. Manufacturer's Light and Heat Co.*, 450 Pa. 228, 299 A.2d 646 (1973); *Percy A. Brown & Co. v. Raub*, 357 Pa. 271, 54 A.2d 35 (1947).

The basic rule of construction for interpreting contracts was recently restated in *Felmont Oil Corporation v. Cavanaugh*, 300 Pa.Super. 520, 525, 446 A.2d 1280, 1283 (1982) (J.1431/1978), quoting *Wilkes-Barre Township School District v. Corgan*, 403 Pa. 383, 386, 170 A.2d 97, 98–99 (1961):

In construing a deed or contract, certain general principles must be kept in mind. First, it is the intention of the parties *at the time of entering thereto that governs*, and such intention is to be gathered from a reading of the entire contract. In addition, " 'contracts must receive a reasonable interpretation according to the intention of the parties at the time of executing them, *if that intention can be ascertained from this language.* Where the language of a contract is contradictory, obscure and ambiguous, or where its meaning is doubtful, so that it is susceptible of two constructions, one of which makes it fair, customary and such as prudent men naturally execute, *while the other makes it inequitable, unusual or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred.* If one construction would make it unreasonable which another would do justice to both parties, the latter will be adopted.' " (citations omitted) (emphasis in original).

■ We agree with the lower court that the forfeiture clause of the right of way and easement agreement is ambiguous. The inartful use of the conjunction "and/or" leads to two equally possible constructions: (1) that the pipeline must be laid *and* the roddage payment made within two years; or (2) that if either the pipeline is laid *or* the roddage payment is paid, then a perpetual easement was created. Thus, the lower court properly admitted oral testimony, not to vary the terms of the agreement, but to ascertain the mutual understanding of the parties.

Once parol evidence is admitted, the intent of the parties as well as the credibility of the witnesses, becomes a question of fact to be determined by the fact finder. A lower court's finding relevant to persons' intent will not be overturned on appeal *unless the record contains convincing evidence which has been capriciously disregarded and which is inconsistent with the lower court's findings.* Yuhas v. Schmidt, 434 Pa. 447, 258 A.2d 616 (1969); Hankin et al. v. Goodman, 432 Pa. 98, 246 A.2d 658 (1968). *Castellucci v. Columbia Gas of Pennsylvania, Inc.,* 226 Pa.Super. 288, 294, 310 A.2d 331, 334 (1973) (emphasis added).

■ However, we must conclude here that the trial judge's construction of the forfeiture clause is neither reasonable nor supported by the evidence since it clearly disregarded the intention of the parties.

The testimony of Richard Way, employee of National was as follows:

By Mr. Embser (for National):

Q. Now, was there a discussion prior to the execution of this agreement with regard to the clause included in the agreement which reads in case no pipe is laid thereon and/or such payment is not made within two years of the date hereof, this grant shall thereupon cease and determine?

A. Yes.

Q. And what was that discussion?

A. Well, I discussed that along with every paragraph or every clause in the right of way or easement agreement

with every landowner and the way it was discussed with everyone was that we would have two years in which to *either* pay the roddage figure which was set forth in the paragraph or lay the pipeline. If neither was done, the right of way would become null and void.

N.T., February 25, 1980, p. 5–6. (emphasis added).

Further, the cross examination of Mr. Way by Mr. Cahilly (for Bito Bucks) was as follows:

Q. Mr. Way, did I understand now that you specifically discussed with Mr. Clancy the meaning of the phrase and/or and what you understood its legal effect had in the document you were asking him to sign?

A. Yes.

Q. And do I understand you did explain to him that your company would have two years to do one of three things, pay him the roddage, lay the pipeline, or do both?

A. The way I actually explained it was that we would have two years in which to pay the roddage or lay the pipeline is the best I recall.

Q. But either/or?

A. Yes.

Q. And did you explain to him that upon the event of either of those occurring that the easement agreement that you are asking him to sign would be perpetual in terms of existence?

A. For so long as it was used for the purpose granted.

N.T., February 25, 1980, p. 11–12.

Mr. Way succinctly summarized his understanding of the forfeiture clause that:

"[As] plain and simple as best I can put it, *it was stated that we would have two years under this right of way as it stood and within that time period we would either have to pay that roddage if we didn't in fact lay the pipeline.*"

N.T., February 25, 1980, p. 17. (emphasis added).

The testimony of Frank McGuire, Vice President, shareholder and a director of Penn Valley was as follows:

By Mr. Embser:

Q. [I am] going to show you a copy or the agreement and ask you if at that time the business where the right of way agreement calls for payment and/or placement of the pipe within two years was discussed?

A. Yes, it was.

Q. And how was this explained to you?

A. Well, we were told that the gas company would either pay us within two years for the right of way or they would put the pipeline in and pay us, was our understanding. But we would be paid for the right of way within two years either way.

Q. Now, and was that your understanding of that clause?

A. Yes.

Q. And did you discuss this with other officers of the corporation?

A. With Ed [Clancy, corporate president].

Q. And was the corporation in agreement with this interpretation of the clause?

A. Yes, we were.

N.T., February 25, 1980, p. 32.

Mr. McGuire also testified as to his understanding of the conversations at the time of the execution of the agreement:

[that] as close as I can get to it and remember the conversation is that Mr. Way was trying to explain to us that we were either going to get our money for the right of way within two years or we get it sooner if they start laying pipe sooner than that.

N.T., February 25, 1980, p. 39.

Finally Mr. McGuire testified concerning his understanding of the effect of the roddage payment of $1,691.00 in October of 1974:

A. [that] I understood that they had a right of way then.

Q. Was this to be a permanent right of way?

A. Yes.

N.T., February 25, 1981, p. 33.

Since the objective intent of the parties as expressed in the right of way and easement agreement was ambiguous, the lower court should have looked to the subjective intent of the parties to the agreement through parol evidence. Our review of the record clearly demonstrates that the lower court disregarded the construction of the forfeiture clause the parties had agreed to. The subsequent conduct of the parties following the signing of the right of way and easement agreement remains uncontradicted as evidence of the parties' true intention. Penn Valley's acceptance of the check in October, 1975 and its failure to object when National, surveyed and staked the easement with notices of National's intent to lay the pipeline, indicate that the parties intended that the payment of the roddage created a permanent easement for National.

Since the forfeiture clause is ambiguous and the parties' mutually understood that the payment of the roddage payment would create a perpetual easement, the order of the lower court is reversed.

Reversed.