685 A.2d 574

**Dorothy SOUTHALL and Marliess Antolik,
Her Daughter, Appellants,**

**v.**

**William L. HUMBERT and Carol J. Humbert, His Wife and
James S. Smith and Shirley M. Smith, His Wife.**

Superior Court of Pennsylvania.

Argued Oct. 2, 1996.

Filed Nov. 25, 1996.

Joanne Amicone, Ligonier, for appellants.

Daniel J. Hewitt, Greensburg, for appellees Smiths.

Before KELLY, JOHNSON and OLSZEWSKI, JJ.

JOHNSON, Judge:

In this appeal, we are asked to determine the propriety of the final decree that dismissed the complaint brought by Dorothy Southall and her daughter Marliess Antolik, which averred that William and Carol Humbert did not have an easement for a water line across their property. The Order in question found that the Humberts have a water line easement appurtenant to the Southall–Antolik property. We affirm.

The facts are not disputed. Southall and Antolik own a parcel of real estate designated as lot number 51 on the Ligonier Township tax map # 51–15–00. The Humberts own a parcel of real estate that adjoins the Southall–Antolik property and is designated as lot number 106 on the Ligonier Township tax map # 51–15–00. Both the Southall–Antolik property and the Humbert property were once part of an eighty acre tract owned by Franklin P. Smith. The deeds from Smith to the parties' predecessors in title reserve to Smith, his heirs, and assigns the right to lay and maintain water lines across the properties conveyed.

In 1976, the Humberts laid a water line across lot number 51, the Southall–Antolik property. This property was conveyed to Southall and her husband, and their daughter, Antolik, in 1981. In 1989, the property was again conveyed to Southall and Antolik. At no time prior to 1995 were Southall and Antolik aware of the Humberts' water line. In May, 1995, after learning of the buried water line, Southall and Antolik demanded that the Humberts disconnect the water line and repair any damage caused to the Southall–Antolik property as a result of its installation and removal. The Humberts refused and, instead, entered into an easement agreement with James S. and Shirley Smith for a water line across lot number 51. James S. Smith is Franklin P. Smith's sole heir. Thereafter, Southall and Antolik filed suit seeking a permanent injunction against the Humberts and the Smiths to stop them from trespassing on the Southall–Antolik property and seeking that the court order the Humberts to remove their water line from the Southall–Antolik property.

Following a bench trial, the court entered a decree nisi that dismissed Southall and Antolik's complaint because it found that the Humberts had a water line easement across the Southall–Antolik property. Thereafter, Southall and Antolik filed a motion for post-trial relief. On February 8, 1996, the court denied their motion and entered a final decree that dismissed their complaint. This appeal followed.

Southall and Antolik contend that: 1) Smith's reservation created a personal right that could not be conveyed; 2) the reservation clause in the prior deeds in their chain of title did not give them notice that their property was burdened with a water line easement; 3) the Humberts are not assigns of Smith, their original grantor, and therefore do not have an easement based on their chain of title; 4) Smith abandoned any right he had in the Southall–Antolik property by conveying all of the property that adjoins the Southall–Antolik property; and 5) Smith's release and quitclaim of his interest and title in the Southall–Antolik chain of title extinguished the reservation clause that created an easement.

■ Because Southall and Antolik filed an action in equity, our standard of review is as follows:

> [A]ppellate review of equity matters is limited to a determination of whether the chancellor committed an error of law or abused his discretion. The scope of review of a final decree in equity is limited and will not be disturbed unless it is unsupported by the evidence or demonstrably capricious.

*Hostetter v. Hoover,* 378 Pa.Super. 1, 6, 547 A.2d 1247, 1250 (1988) (citations omitted), quoting *Rosen v. Rittenhouse Towers,* 334 Pa.Super. 124, 129, 482 A.2d 1113, 1116 (1984). With this standard in mind, we proceed to consider Southall and Antolik's contentions.

First, the record reveals that Southall and Antolik's chain of title is as follows:

Franklin P. Smith to Harold P. and Patricia M. Erny, deed dated November 5, 1971.

Harold P. and Patricia. M. Erny to Fred Southall and Dorothy Southall, his wife, and Marliess Antolik, daughter, deed dated January 10, 1981.

Franklin P. Smith joined the above transaction to release and quitclaim his rights, title, and interests to the Grantees, deed dated January 10, 1981.

Fred Southall and Dorothy Southall, his wife, and Marliess Antolik, their daughter, to Dorothy Southall and Marliess Antolik, her daughter, deed dated November 2, 1989.

Plaintiff's Exhibits 2, 3, and 11.

The record also reveals that the Humberts' chain of title is as follows:

Franklin P. Smith to Harry F. Kriner, deed dated October 4, 1971.

Harry F. Kriner to Clinton and Dorothy J. Baker, deed dated June 4, 1974.

Clinton and Dorothy J. Baker and Franklin P. Smith to William and Carol Jean Humbert, deed dated August 20, 1974, and corrective deed dated November 8, 1976.

Plaintiff's Exhibits 7, 8, 9, and 10. Every deed in the parties' chains of title either contains or references the following reservation:

The Grantor reserved to himself, his heirs and assigns the right to go over, in[,] on, and across the premises described herein for the purpose of connecting with any water lines or other utility right of ways [sic] and in connection therewith, said grantor reserves the right to lay, operate, maintain, and repair any such water lines or utility conduit erected thereon or laid across such land.

Plaintiff's Exhibits 2, 3, 7, 8, 9, 10, and 11.

Southall and Antolik contend that, by this clause, Franklin P. Smith reserved a personal right that could not be conveyed. In essence, Southall and Antolik argue that Smith's reservation created an easement in gross, not an easement appurtenant.

As discussed above, Southall, Antolik, and the Humberts are ultimate purchasers from Franklin P. Smith, the common grantor. Both parties took title subject to the above-stated reservation.

■ Southall and Antolik urge this Court to read the reservation by itself to reach the conclusion that Smith's reservation created an easement in gross. "[T]he same rules of construction apply to deeds granting easements as to contracts generally." *Bito Bucks in Potter, Inc. v. Nat. Fuel Gas Supply Corp.*, 303 Pa.Super. 208, 212, 449 A.2d 652, 653 (1982). Our supreme court stated that:

> In construing a deed or a contract, certain general principles must be kept in mind. First, it is the intention of the parties *at the time of entering in thereto that governs,* and such intention is to be gathered from a reading of the entire contract. In addition, " 'Contracts must receive a reasonable interpretation, according to the intention of the parties at the time of executing them, if that intention can be ascertained from their language. . . .' "

*Wilkes-Barre Twp. Sch. Dist. v. Corgan,* 403 Pa. 383, 386, 170 A.2d 97, 98 (1961) (citations omitted). With these principles in mind, we consider this contention.

■ Our supreme court has defined a reservation as the " 'creation of a right or interest which had no prior existence as such in a thing or part of a thing granted.' " *Lauderbach–Zerby Co. v. Lewis,* 283 Pa. 250, 254, 129 A. 83, 84 (1925), quoting *Kister v. Reeser,* 98 Pa. 1, 5 (1881).

> It is settled law in Pennsylvania that an owner of land may arrange it as he pleases, doing no injury to others, and that any ways or other privileges which he may provide for the necessary or convenient use of the different parts of the land, or of structures on it, will remain as servitudes upon the parts subjected to them by him, in the hands of subsequent purchasers with notice, or when the easements are continuous or apparent. The easements thus created, being for the specific use of the lands for which they were provided, become appurtenances of those dominant estates,

and require no deed or writing to support them; they pass by a conveyance of the estates to which they are appurtenant.

*Lewis, supra,* at 254–55, 129 A. at 84, quoting *Held v. McBride,* 3 Pa.Super. 155, 158 (1896). More recently, our supreme court recognized the grantor's right to reserve for his or her use an easement over land conveyed, and noted that the grantor must disclose his or her intent to do so by the words he or she uses. *Piper v. Mowris,* 466 Pa. 89, 95, 351 A.2d 635, 638 (1976).

■ After reviewing the deeds in question, we conclude that the language in the original deed between Franklin P. Smith and Harold P. and Patricia P. Erny created an easement by reservation. In *Brady v. Yodanza,* our supreme court stated that:

> Creation of an easement appurtenant is accomplished by reserving unto the grantor an easement or right of way over the land conveyed, . . . . This reservation is conceptually fused with the land it benefits and passes with the land if there is a subsequent conveyance. An expressly created easement appurtenant can conceivably last forever.

*Brady,* 493 Pa. 186, 189, 425 A.2d 726, 727 (1981) (footnote omitted). An easement is appurtenant when a servient estate exists for the beneficial use of a dominant estate. *Id.*

In the instant case, although the reservation clause in the deeds does not name the dominant and servient estates, Smith's intention can be gleaned from a review of the deeds in Southall and Antolik's, and the Humberts', chains of title. As discussed above, both the Southall–Antolik property and the Humbert property are derived from a tract of land formerly owed by Smith, their common grantor. We conclude that by virtue of the reservation provision Smith created reciprocal appurtenant easements: each parcel conveyed from the original tract serves as a servient estate for the beneficial use of the remaining property of that common tract formerly owned by Smith, their common grantor. *See Hassler v. Mummert,* 242 Pa.Super. 536, 539, 364 A.2d 402, 404 (1976) ("The choice

of identical terms to describe both easements indicates a purpose to establish identical and reciprocal rights."). Here, the Southall–Antolik property is servient to the Humbert property, the dominant estate.

■ Next, Southall and Antolik argue that the reservation clause in the deeds in their chain of title did not give them notice that their property was burdened with a water line easement. In *Owens v. Holzheid,* 335 Pa.Super. 231, 484 A.2d 107 (1984), the deed to the grantee and to the grantee's immediate predecessors in title did not reference the easement in question, although an earlier deed in the grantee's chain of title did recognize a prior grant of an easement. *Owens, supra,* at 235, 484 A.2d at 109. There we held that the grantee had constructive notice of the easement because in Pennsylvania a grantee of a deed has a duty to search the chain of title. *Id.* at 239, 484 A.2d at 111. This duty arises because the grantee takes subject to any "restriction or servitude which appears in the line of title," although he or she may not have any actual knowledge of its existence. *Id.* Moreover, our supreme court has stated that:

> The weight of authority is to the effect that if a deed or a contract for the conveyance of one parcel of land, with a covenant or easement affecting another parcel of land owned by the same grantor, is duly recorded, the record is constructive notice to a subsequent purchaser of the later parcel. The rule is based generally upon the principal that a grantee is chargeable with notice of everything affecting his title which could be discovered by an examination of the records of the deeds or other muniments of title of his grantor.

*Piper, supra,* at 97, 351 A.2d at 639, quoting *Finley v. Glenn,* 303 Pa. 131, 136, 154 A. 299, 301 (1931).

■ The principles announced by our supreme court in *Piper, supra,* and by this Court in *Owens, supra,* are clearly applicable here. Southall and Antolik's deed specifically refers to the reservation clause contained in their original grantor's deed. The reservation was referenced in every recorded

deed within their chain of title. Thus, contrary to Southall and Antolik's assertions, the Humberts were under no duty to inform them of the water line buried under the Southall–Antolik property. Therefore, we conclude that Southall and Antolik's contention is meritless because they had constructive notice of the water line easement. *Piper, supra.*

Southall and Antolik also contend that the Humberts are not assigns of Franklin P. Smith and that they are therefore not entitled to the easement across the Southall–Antolik property. An assignor is defined as "[a] person who assigns or transfers property to another." Black's Law Dictionary 109 (5th ed.1979). The term "assigns" is defined as follows:

> [T]hose to whom property is, will, or may be assigned. Used *e.g.* in the phrase, in deeds, "heirs, administrators, and assigns to denote the assignable nature of the interest or right created." It generally comprehends all those who take either immediately or remotely from or under the assignor, whether by conveyance, devise, descent, or act of law.

*Id.* We have stated that "[a]n assignment extinguishes the assignor's right to performance by the obligor and transfers that right to the assignee.... '[T]he assignee stands in the same shoes as the assignor.'" *Etter v. Industrial Valley Bank & Trust Co.,* 356 Pa.Super. 502, 509, 515 A.2d 6, 9 (1986) (citations omitted), quoting *U.S. Steel Homes Credit Corp. v. South Shore Dev. Corp.,* 277 Pa.Super. 308, 314, 419 A.2d 785, 789 (1980).

There is no doubt that the Humberts are Smith's assigns because, as discussed above, Smith is the original grantor in their chain of title and the Humberts took title to their property by conveyance. Thus, we conclude that this claim is wholly without merit because the reservation in the Southall–Antolik deed created an easement appurtenant which gave Smith's assigns, the Humberts, rights that they cannot be divested of involuntarily. *Piper, supra.*

We note that Smith's *heirs* do not have any interest in the easements created by reservation because the property for-

merly owned by Franklin P. Smith did not pass via the laws of inheritance. Use of the phrase "heirs" merely provided for the possibility that Smith may have died without transferring the property or without designating a successor to his property either by will or by law. *See* Black's Law Dictionary 651 (5th ed.1979).

We also note that our finding that Smith created an easement appurtenant negates Southall and Antolik's contention that Smith abandoned any rights that he, his heirs, and assigns had in the Southall–Antolik property when he conveyed the property adjoining the Southall–Antolik property. Smith could not abandon the easement appurtenant because he did not have title to the easement; title to the easement rests with Smith's assigns, the Humberts, who received title to the easement by conveyance. *Brady, supra,* at 190–91, 425 A.2d at 728.

Finally, Southall and Antolik contend that the release and quitclaim provision in their chain of title extinguished the reservation that created the easement in the Southall–Antolik property. In the deed from Harold P. and Patricia M. Erny and Franklin P. Smith to Southall and Antolik dated January 10, 1981, the quitclaim provision reads as follows:

The said Franklin P. Smith, single, has joined in this transaction to release and quit claim [sic] unto Grantees all rights, title and interest in said premises, specifically but not limited to, right to consent to or purchase the subject premises.

Plaintiff's Exhibit 3, ¶ 7. That deed's fourth paragraph reads as follows:

EXCEPTING AND RESERVING a right to go over, in[,] on and across the above described premises for the installation of water lines and other utility right of ways [sic] as more fully defined in Deed Book Volume 2092, page 461.

*Id.,* ¶ 4.

As discussed above, in construing the meaning of deeds, we must try to ascertain the parties' intent. Our supreme court has stated that:

> Where the language of a contract is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that it is susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, *while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred.*

*Wilkes-Barre Twp. Sch. Dist., supra,* at 386–87, 170 A.2d at 98–99 (footnote omitted).

 Here, the seventh and fourth paragraphs of the deed in question appear to be contradictory. However, as discussed above, the reservation clause created an easement appurtenant. Unlike an easement in gross, the right created by that easement was not personal to Smith. The quitclaim provision is ineffective against the water line easement because a quitclaim deed only conveys the grantor's interest in or title to the property described. *Greek Catholic Congregation of Borough of Olyphant v. Plummer,* 347 Pa. 351, 352–353, 32 A.2d 299, 300 (1943). "One who receives a quit-claim [sic] deed to a property must proceed with caution if he seeks to possess himself of that property." *Id.* at 353, 32 A.2d at 300. Here, Smith did not have an interest in or title to the water line easement because he transferred such interest or title to subsequent owners of the servient and dominant estates. After review of this deed and the deeds of Southall and Antolik's predecessors in title, we conclude that the quitclaim provision does not extinguish the easement reserved by Smith.

 In addition, a review of Southall and Antolik's chain of title reveals that Smith reserved a personal right in the original transfer to the Ernys, Southall and Antolik's predecessor in title. In the deed from Franklin P. Smith to Harold P. and Patricia M. Erny, dated November 5, 1971, the following language appears:

IT IS SPECIFICALLY COVENANTED AND AGREED that as part of the consideration hereof the grantor herein

during his lifetime or for 20 years hereafter, whichever is shorter, shall have the right to approve and consent to any parties who may contemplate purchasing from the grantees herein, their heirs or assigns, or in lieu thereof, to purchase the same at the price at which the sale is to be consummated.

Plaintiff's Exhibit 2. Smith, in effect, held a personal right of first refusal.

 Our supreme court cited Professor Corbin's analysis of a right of first refusal with approval:

If [a third party] should make an offer [,] the owner of the land was privileged not to accept it, and also not to make any offer to the promisee. But the owner was bound by duty not to accept the offer of the [third party] without first giving an option to the promisee.

*Gateway Trading Co. v. Children's Hosp. of Pittsburgh,* 438 Pa. 329, 335, 265 A.2d 115, 119 (1970), quoting A. Corbin, Corbin on Contracts p. 363 (One Vol. Ed.1952). A grant of the right of first refusal is an agreement that contemplates the eventual or potential sale of property. *See Colarossi v. Faber,* 359 Pa.Super. 259, 266, 518 A.2d 1224, 1228 (1986). The right of first refusal differs from an option to purchase in that there are no certain terms as to price or to the option period. *Id.* at 267, 518 A.2d at 1228. This Court has stated that:

The right of first refusal is a valuable property right. The importance of the right to its holder is that the holder may assert ownership of the property provided that the owner meets the conditions of the right.

*Boyd & Mahoney v. Chevron, U.S.A.,* 419 Pa.Super. 24, 30, 614 A.2d 1191, 1194 (1992).

Here, the above-stated provision, in the deed dated November 5, 1971, gave Smith a personal right to consent to any future sale of the property conveyed or to purchase the property at the price that a third party purchaser may have offered. By the above stated clause, the Ernys, their heirs, or assigns would have been duty bound to first inform Smith of an offer and give Smith the opportunity to purchase the

property for the same price. In addition, the clause specifically states that the agreement contemplates the potential sale of the property. Moreover, Smith reserved to himself the right of first refusal because the clause explicitly states that the "grantor ... shall have the right." Plaintiff's Exhibit 2. Therefore, we find that the quitclaim provision in the deed dated January 10, 1981, and quoted above ended Smith's personal right of first refusal, along with any other personal rights that Smith may have had. *Plummer, supra,* at 353, 32 A.2d at 300; *cf. Hershey v. Poorbaugh,* 145 Pa.Super. 482, 485–87, 21 A.2d 434, 435–36 (1941) (a grantor can only convey that which he owns).

Based on the foregoing, we find no error in the trial court's determination that the Humberts have a water line easement appurtenant to the Southall–Antolik property and that the Humberts' rights arose via the conveyance to them and their predecessors in title. Accordingly, the order is affirmed.

Order of February 8, 1996, Court of Common Pleas, Westmoreland County, Civil Division at No. 4533 of 1995 is **AFFIRMED.**