J. A20006/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| STEVEN L. PLASIC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JOHN D. BOTTIGLIER, KANDI L. | : | |
| LAFFERTY, GARY T. DEIMLER, | : | |
| NANCY L. DEIMLER, TERI A. | : | |
| SUTHERLAND, AND JACK BERTOLETTE | : | |
| | : | |
| APPEAL OF:  JOHN D. BOTTIGLIER, | : | |
| KANDI L. LAFFERTY, GARY DEIMLER, | : | No. 78 MDA 2019 |
| NANCY DEIMLER, AND | : | |
| JACK BERTOLETTE | : | |

Appeal from the Judgment Entered December 24, 2018,
In the Court of Common Pleas of Dauphin County
Civil Division at No. 2013-CV-08615-QT

BEFORE:  GANTMAN, P.J.E., McLAUGHLIN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED NOVEMBER 18, 2019**

John D. Bottiglier, Kandi L. Lafferty, Gary Deimler, Nancy Deimler, and

Jack Bertolette (collectively "appellants") appeal from the December 24, 2018

judgment entered in the Court of Common Pleas of Dauphin County in favor

of Steven L. Plasic ("Plasic") and against appellants pursuant to the trial court's order entered December 6, 2018.[1]  We affirm.

The trial court set forth its findings of fact as follows:

> What is known as Stone Glen Road is an unimproved private road between Stoney Creek Road and Hemlock Lane[,] which follows the course of an abandoned railway line once owned by the Reading Railroad Company in Middle Paxton Township, Dauphin County.  The parties to the present matter are owners of land abutting or bisected by Stone Glen Road who share a common predecessor in title, Warren G. Stone.  Stone had acquired the land at issue from Dauphin Consolidated Water Supply Company and subdivided and sold off the parcels at issue in the 1950's.  Each of the Deeds of the parties' predecessors in titled [sic] make reference to the bed of the old railroad as a right of way or a right to use "in common with either owners and occupiers of land adjourning [sic] said right of way".
>
> More specifically, the Deed from Stone to [Plasic's] predecessor in title, his parent[,] states:
>
> > Reserving unto the parties of the first part [Stone] their heirs and assigns the ingress, egress and regress over and upon

---

[1] We note that John D. Bottiglier and Kandi L. Lafferty are husband and wife and are collectively referred to as "Bottiglier."

We note that Gary Deimler and Nancy Deimler are husband and wife and are collectively referred to as "Deimler."

We note that Martha Mercurio, wife of appellant Bertolette, was not a named defendant in the underlying quiet title action.  However, Mercurio and appellant Bertolette hold title to their property as tenants by the entirety.  The trial court held that Mercurio, "although not named as [a] defendant, would be bound by [the trial c]ourt's determination."  (Notes of testimony, 9/19/18 at 5.)

We note that Teri A. Sutherland is not a party to this appeal.

the right of way thirty-three (33) feet wide in the location formerly occupied by the Reading Railroad Company to be used in common with the owners and occupiers of land adjoining the right of way. (Deed Book [Vol.] 102[,] page 183).

Consistent with the reservation in [Plasic's] claim of title is the following which appears in the claims of [] Sutherland and Deimler:

Together with the right to use of a twenty (20) feet driveway, formerly the road bed of the Reading Railroad Company, crossing within described premises, which is to be used in common for ingress, egress and regress with the owners or occupiers of land abutting therein. (Deed Book Vol. 41, page 33).

These chains of title also include language by which [] Sutherland and Deimler took title subject to ways and rights of record and visible upon the land.

Similarly, [] Bertolette's Deed contains the following:

Together with the right to the use of the said old railroad bed in common with the prior owner for ingress, egress and regress to the several portions of the land of the prior owner as well as such land as he has formerly conveyed therefore. This provision being copied from deed of prior owner, and which provisions and right it is expressly meant to be conveyed together with the property hereinbefore described. (Deed Book [Vol.] 4188, page 234)[.]

Also, of significant note, [] Bottiglier's chain of title also includes a recorded survey (Deed Book [Vol.] 1215[,] Page 191) which shows at [sic] thirty-three (33) foot Dauphin Consolidated Water Supply Company right of way across his land and entering that of [Plasic] and [] Deimler.

[] Bertolette's chain of title includes a Deed from Stone which includes a course "to the Old Reading Railroad Bed" there "along the south side of said Reading Railroad bed". (Reference number 20090036997)[.] The Deed out of Stone to [] Bertolette's predecessor in title also states:

> The Grantee herein shall have the privilege of using, together with adjoining property owners, a sixteen (16) feet right of way over and across the lands of Warren S. Stone, et ux.

In the many years that preceded this dispute the parties and their predecessors in title mutually used and individually maintained Stone Glen Road. By Agreement, in November of 2001[, Plasic,] Bottiglier and Lafferty and other landowners along Stone Glen Road to the west of [Plasic's] property agreed to maintain a clear roadway, in common, for ingress and egress (Deed Book [Vol.] 4188, page 252). Neither [] Sutherland, Deimler and Bertolette, whose property is to the east of [Plasic's] property, nor their predecessors in title were a part[y] to the Agreement.

In relatively recent history[, appellants and Sutherland] and their predecessors in title have sought to discourage non-residents from using Stone Glen Road and to regulate traffic by placing logs along the side of the roadbed, a pole in the middle of the roadbed and a fence or chain across the roadbed. It is for these reasons [Plasic] has brought this action.

By his Complaint[, Plasic] seeks to quiet title to traverse Stone Glen Road by right of way [and] further seeking to permanently enjoin [appellants and Sutherland] from interfering with his right to travel Stone Glen Road. [Appellants and Sutherland] have opposed [Plasic's] action claiming that he does not have an express easement over their property. The

[trial c]ourt agrees with Bertolette but disagrees with [the] remaining [appellants and Sutherland].[2]

The course of the old railroad bed, now known as Stone Glen Road is apparent upon inspection of the land and is not in dispute. While the width varies, 16 feet[ – ]Bertolette, 20 feet[ – ]Sutherland, 33 feet[ – Plasic] and by no measure in the instance of [] Bottiglier and Lafferty, as determined by the Deeds, the course has remained unchanged.

Trial court opinion and order, 12/6/18 at 1-4.[3]

The record reflects that on October 1, 2013, Plasic filed a quiet title action against appellants, as well as Teri A. Sutherland and Bryan D. Mumma.[4] On September 19, 2018, a non-jury trial was held. At the conclusion of Plasic's case-in-chief, appellants moved for a non-suit. The trial court took the motion under advisement. At the conclusion of the non-jury trial, appellants renewed their motion for a non-suit. The trial court continued to take the motion under advisement.

On December 6, 2018, the trial court entered its opinion and order finding in favor of Plasic and enjoining appellants and Sutherland from

---

[2] We note that the trial court agreed that Plasic's quiet title action did not involve the portion of the railroad bed now referred to as Hemlock Lane, which transects Bertolette's property. (Notes of testimony, 9/19/18 at 126.) The trial court limited its "examination to the status of the railroad bed . . . in Stone Glen Road west of its intersection of Hemlock [Lane]." (*Id.*)

[3] The trial court's opinion and order does not contain pagination; for ease of our discussion, we have assigned each page a corresponding number.

[4] We note that the complaint misidentified Mumma as "Brian D. Mumma." The trial court dismissed Mumma from this cause of action without prejudice at the start of the non-jury trial. (*Id.* at 4.)

interfering with Plasic's peaceful use "in the bed of the old railroad now known as Stone Glen Road" as it crosses each party's property for purposes of ingress and egress in common with appellants and Sutherland. (**Id.** at 4.) On December 17, 2018, appellants filed an untimely motion for post-trial relief.[5] The trial court denied the post-trial motion on December 18, 2019. On December 24, 2018, judgment was entered in accordance with the trial court's opinion and order dated December 6, 2018.

On January 7, 2019, appellants filed a timely notice of appeal.[6] The trial court ordered appellants to file a concise statement of errors complained of

---

[5] We note that the record contains an original motion for post-trial relief that was time-stamped as entered on December 18, 2018. The record also contains a copy of the motion for post-trial relief that was time-stamped as entered on December 17, 2018. The motion for post-trial relief was untimely because it was not filed within ten days of the trial court's decision in the non-jury trial. **See** Pa.R.Civ.P. 227.1(c)(2) (stating, "Post-trial motions shall be filed within ten days after . . . (2) notice of nonsuit or the filing of the decision in the case of a trial without jury."). Although the motion for post-trial relief was untimely, the trial court, nonetheless, entertained the motion and denied it on substantive grounds.

[6] In a **per curiam** order, this court directed appellants to show cause why the instant appeal should not be dismissed as premature on the grounds that the post-trial motion was still pending and judgment had not been entered. (**Per curiam** order, 2/15/19.) In response, appellants stated that upon discovering that the trial court order denying the post-trial motion had been entered on the wrong docket, appellants corrected the error. Appellants provided this court with a revised docket statement showing that the post-trial motion had been denied on December 18, 2018, and judgment was entered on December 24, 2018. This court discharged its rule to show cause and referred the matter to the merits panel. Upon review of the record, we find that the appeal is properly before this court.

on appeal pursuant to Pa.R.A.P. 1925(b). Appellants timely complied. The trial court subsequently filed its Rule 1925(a) opinion.

Appellants raise the following issue for our review: "Whether the trial court erred in finding as a matter of law that [Plasic] has an express easement over appellants' property[?]" (Appellants' brief at 2 (unnecessary capitalization omitted).)

> In reviewing the ruling of the trial court in an action to quiet title, an appellate court's review is limited to determining whether the findings of fact are supported by competent evidence, whether an error of law has been committed, and whether there has been a manifest abuse of discretion.

***Vernon Township Volunteer Fire Dep't, Inc. v. Conner***, 855 A.2d 873, 879 (Pa. 2004) (citation omitted). "An appellate court may not substitute its judgment for that of the trial court if the determination of the trial court is supported by competent evidence." ***Id.*** (citation omitted).

Here, appellants argue the trial court erred in determining that Plasic had an express easement across their properties. (Appellants' brief at 5.) Appellants contend that Stone reserved an express easement in the deed to Plasic's predecessor-in-title, his parents, that was only for the benefit of Stone and was not meant to benefit Plasic. (***Id.***)

"[T]he same rules of construction apply to deeds granting easements as to contracts generally." ***Southall v. Humbert***, 685 A.2d 574, 577 (Pa.Super. 1996) (citation omitted).

> In construing a deed or a contract, certain general principles must be kept in mind. First, it is the intention of the parties at the time of entering in thereto that governs, and such intention is to be gathered from a reading of the entire contract. In addition, [c]ontracts must receive a reasonable interpretation, according to the intention of the parties at the time of executing them, if that intention can be ascertained from their language.

*Id.* citing ***Wilkes-Barre Twp. Sch. Dist. v. Corgan***, 170 A.2d 97, 98 (Pa. 1961).

> Creation of an easement appurtenant is accomplished by reserving unto the grantor an easement or right of way over the land conveyed, said right of way being intended to benefit other lands retained by the grantor. This reservation is conceptually fused with the land it benefits and passes with the land if there is a subsequent conveyance. An expressly created easement appurtenant can conceivably last forever.
>
> . . . .
>
> [W]here an easement is annexed as an appurtenance to land by an express or implied grant or reservation . . . it passes with a transfer of the land although not specifically mentioned in the instrument of transfer. . . . Unless the common grantors limit or make personal the right of way, it is an appurtenance to the land it benefits.

***Brady v. Yodanza***, 425 A.2d 726, 727-728 (Pa. 1981) (citations and footnotes omitted). Reciprocal appurtenant easements exist when "each parcel conveyed from the original tract serves as a servient estate for the beneficial use of the remaining property of that common tract formerly owned by [] their common grantor." ***Southall***, 685 A.2d at 578 (citation omitted).

> An assignor is defined as "a person who assigns or transfers property to another." The term "assigns" is defined as follows:
>
> > Those to whom property **is**, will, or may be assigned. Used **e.g.** in the phrase, in deeds, "heirs, administrators, and assigns to denote the assignable nature of the interest or right created." It generally comprehends all those who take either **immediately** or remotely from or under the assignor, whether by conveyance, devise, descent, or act of law.

*Id.* at 579 (brackets omitted, emphasis added), citing Black's Law Dictionary 109 (5th ed. 1979).

Here, a review of the record demonstrates that Stone was the common grantor of all of the properties involved in the instant matter. (Plaintiff's Exhibits A-F.) In 1948, Stone conveyed to Bertolette's predecessor-in-title the property identified as Parcels 5 and 6 at trial. (Plaintiff's Exhibit F, Deed Vol. 32 at Pages 413-415; *see also* defendant's Exhibit 1.) In that conveyance, Stone granted Bertolette's predecessor-in-title "the privilege of using, **together with adjoining property owners**, a sixteen (16) feet right of way over and across the lands of [Stone]." (Plaintiff's Exhibit F, Deed Vol. 32 at Page 413 (emphasis added).)

In 1951, Stone conveyed the property identified as Parcel 1 at trial to Bottiglier's predecessor-in-title reserving for himself an easement appurtenant and granting Bottiglier's predecessor-in-title the same across the "old railroad bed." (Defendant's Exhibit 1, *see also* plaintiff's Exhibit B, Deed Vol. 35 at

Pages 544-547.)  The grant of the easement appurtenant stated specifically, "Together with the right to the use of the said old railroad bed **in common with** party of the first part[, (Stone),] for ingress, egress and regress **to the several portions of the land** of the party of the first part[, (Stone)], **as well as such land as he has formerly conveyed therefrom**."  (Plaintiff's Exhibit B, Deed Vol. 35 at Page 545 (emphasis added).)

In 1956, Stone conveyed the property that was later sub-divided into Parcels 3 and 4, as identified at trial, to Deimler's and Sutherland's predecessor-in-title.[7]  (Defendant's Exhibit 1; *see also* plaintiff's Exhibit D, Deed Vol. 41 at Page 33; plaintiff's Exhibit C, Deed Vol. 41 at Pages 33-35.) In that deed, Stone again reserved for himself an easement appurtenant and granted Deimler's and Sutherland's predecessor-in-title the same; the specific language of the deed stated, "Together with the right to the use of a twenty (20) feet driveway, formerly the road bed of the Reading Railroad Company, crossing the within described premises, **which is to be used in common for ingress, egress and regress with the owners or the occupiers of land abutting thereon.**"  (Plaintiff's Exhibit D, Deed Vol. 41 at Page 33; plaintiff's Exhibit C, Deed Vol. 41 at Page 33 (emphasis added).)

Finally, in 1957, Stone conveyed to Plasic's predecessor-in-title Parcel 2, as identified at trial, "[r]eserving unto the parties of the first part [(Stone)], their heirs and **assigns**, the right of ingress, egress and regress over and

---

[7] Both Deimler and Sutherland had the same predecessor-in-title, E.M. Harter.

upon the right of way thirty-three (33) feet wide in the location formerly occupied by the Reading Railroad Company **to be used in common with other owners and occupiers of land adjoining said right of way.**" (Defendant's Exhibit 1; **see also** plaintiff's Exhibit A, Deed Vol. 42 at Pages 23-25 (emphasis added).)

The record reveals that by including similar language in each deed of the predecessors-in-title whose property abutted or was bisected by the former railroad bed, Stone created reciprocal easements appurtenant or common rights-of-way for ingress, egress and regress over each owner's property for the benefit of all the other owners. **Southall**, 685 A.2d at 578 (noting, "The choice of identical terms to describe both easements indicates a purpose to establish identical and reciprocal rights."). Moreover, the specific language in the easement conveyed by Stone to Plasic's predecessor-in-title, created a reciprocal easement appurtenant for the benefit of Stone's assigns, which included Plasic's predecessor-in-title and which passed with the land for the benefit of Plasic. **Id.** at 579 (stating, "The assignee stands in the same shoes as the assignor." (brackets omitted)).

A review of the record supports the trial court's findings of fact and we discern no error of law or abuse of discretion in the trial court's conclusion that "the language in the original deeds from Stone to [appellants, Sutherland] and [Plasic's] predecessor[s] in title reserved to [Plasic], his successors in title, [Sutherland] and [appellants], a right of way in common, in the bed of

- 11 -

the old railroad now known as Stone Glen Road." (Trial court opinion and order, 12/6/18 at 4.) Therefore, appellants claim is without merit.

Judgment affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/18/2019