J-A11003-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JACK W. GROSS AND TANAY NESTICO, HUSBAND AND WIFE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| NANCY BROYAN | : | |
| Appellant | : | No. 1388 MDA 2024 |

Appeal from the Order Entered August 21, 2024
In the Court of Common Pleas of Columbia County Civil Division at
No(s):  2023-CV-0000367-QU

BEFORE:   MURRAY, J., KING, J., and STEVENS, P.J.E.*

MEMORANDUM BY MURRAY, J.:          **FILED: MAY 27, 2025**

Nancy Broyan (Appellant[1]) appeals from the order entering summary judgment against her, and in favor of Jack W. Gross and Tanay Nestico, husband and wife (collectively, Plaintiffs), in this action to quiet title and for

---

* Former Justice specially assigned to the Superior Court.

[1] In its August 21, 2024, opinion, the trial court stated the following:

> At argument on August 20, 2024 (on-the-record), it was confirmed that [Appellant] has conveyed her interest in her real estate to her son, Paul O. Broyan [(Paul)].  At argument, the attorneys confirmed that, although, technically, there should be a substitution of party for [Appellant], this occurrence need not affect [the trial court's determination of Plaintiffs'] motion for summary judgment.

Trial Court Opinion, 8/21/24, at 1 n.1.  There is no suggestion of death filed of record, or substitution of Paul for Appellant.

ejectment related to a former railroad right-of-way. After careful review, we affirm.

As the trial court explained,

[t]his action was brought by the Plaintiffs by filing a Complaint to Quiet Title on April [1]3, 2023. The Plaintiffs assert[ed] in their Complaint that they own fee title to a former railroad bed (the "Subject Premises")[.] … Plaintiffs seek an adjudication that they own fee title to the Subject Premises and that [Appellant] has no interest in the Subject Premises.

Trial Court Opinion, 8/21/24, at 1 (paragraph break omitted).

On May 19, 2023, Appellant filed an answer and counterclaims against Plaintiffs. Appellant's Counter Claim Count I avers superior title to the Subject Premises by virtue of the deed from Penn Central Properties, Inc. (Penn Central), to Appellant and James Broyan (Broyan).[2] Appellant's Answer, New Matter and Counter Claim, 5/19/23, ¶ 61. Appellant based her claim of ownership on a quit claim deed, dated October 7, 1995, from Penn Central to Broyan and Appellant. *Id.* Exh. A. In Counter Claim Count II, Appellant sought the ejectment of Plaintiffs from the Subject Premises, based upon Appellant's claim of superior title, as stated in Counter Claim Count I. *Id.* ¶¶ 64-71.

On June 12, 2024, following discovery, Plaintiffs filed a motion for summary judgment and supporting brief, including an expert report with attachments.

---

[2] Broyan is deceased.

On August 16, 2024, Appellant filed a response, supporting brief, expert report, and attachments opposing the entry of summary judgment in favor of Plaintiffs. On August 21, 2024, after consideration of the record, the parties' brief and oral argument, the trial court entered summary judgment in favor of Plaintiffs and against Appellant as to all claims and counterclaims. Appellant timely appealed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. Did the trial court err as a matter of law and/or abuse its discretion in granting the Plaintiffs' [motion for] summary judgment?.

2. Did the trial court err in granting summary judgment when the Plaintiffs'[] evidence is barred by the **Nanty**[-]**Glo**[3] Rule?

3. Whether the [trial] court erred in completely ignoring [] Appellant's expert report, which held that [Plaintiffs] failed to produce any documentation with which to assert any right, title or interest to the [Subject Premises] …?

Appellant's Brief at 1-2 (footnote added; capitalization and emphasis modified).

We review Appellant's issues under the following standard:

A trial court should grant summary judgment only in cases where the record contains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The moving party has the burden to demonstrate the absence of any issue of material fact, and the trial court must evaluate all the facts and make reasonable inferences in a light most favorable to

_____

[3] **See Borough of Nanty-Glo v. American Surety Co. of New York**, 163 A. 523 (Pa. 1932).

the non-moving party. The trial court is further required to resolve any doubts as to the existence of a genuine issue of material fact against the moving party and may grant summary judgment only where the right to such a judgment is clear and free from doubt. ... [T]he summary judgment standard that a trial court must view the facts, and all reasonable inferences, in a light most favorable to the non-moving party clearly includes all expert testimony and reports submitted by the non-moving party or provided during discovery; and, so long as the conclusions contained within those reports are sufficiently supported, the trial judge cannot *sua sponte* assail them in an order and opinion granting summary judgment. An appellate court may reverse a grant of summary judgment only if the trial court erred in its application of the law or abused its discretion.

*Nigon v. Jewell*, 313 A.3d 1124, 1131-32 (Pa. Super. 2024) (quoting

*Bourgeois v. Snow Time, Inc.*, 242 A.3d 637, 649-50 (Pa. 2020) (internal

citations and quotation marks omitted)). "[T]he issue as to whether there are

no genuine issues as to any material fact presents a question of law, and

therefore, on that question our standard of review is *de novo*." *Id.* at 1132

(quoting *Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010)

(citation omitted)).

Appellant first argues that Plaintiffs' case "is not free from doubt" and,

therefore, the trial court improperly entered summary judgment. Appellant's

Brief at 8. Appellant claims that Plaintiffs' expert witness, D. Robert Davidson,

Esquire, PLS (Attorney Davidson), "bases much of his opinion concerning the

superiority of [] Plaintiffs' title on unsubstantiated and unauthenticated

documents." *Id.* Appellants point out that Attorney Davidson "opines on page

one (1) of his report that the BRHM[, LLC (BRHM) deed,] [the] deed by which

[Plaintiffs] claim title to their property[,] is one mile from [the Subject Premises]." *Id.*

To support her own claim of ownership of the Subject Premises, Appellant relies on a transcribed release (the Release) between Francis Fleming and the Danville, Hazelton and Wilkes Barre Railroad Company (DH), dated May 11, 1877.  Appellant's Brief at 8; Appellant's Response to Summary Judgment, Exh. A, at 3 (unpaginated).  Appellant argues the Release

> would serve not only as a release between the parties but also as an easement in gross running with the land **even though not recorded with the Recorder of Deeds**.  Since this was part of a public judicial action[,] it would serve as constructive notice to the world.  This language is evidence of the right and title to the entire and exclusive possession [of the Subject Premises] by [DH]….

Appellant's Brief at 9 (emphasis added). Appellant claims her chain-of-title shows the Subject Premises was owned by DH and its successors until October 7, 1995, when it was conveyed to Broyan and Appellant.  *Id.* at 10.  Appellant also relies on the October 17, 1995, quitclaim deed conveying the Subject Premises from American Premier Underwriters, Inc. (APU).  *Id.*

Appellant additionally cites evidence that the Columbia County Tax Assessment Office included the Subject Premises as part of Appellant's parcel. *Id.* at 9.  Appellant asserts she paid taxes on the Subject Premises as part of her property "as one unified parcel."  *Id.* at 9-10.  Appellant further claims the Columbia County parcel viewer system depicts the Subject Premises as part of Appellant's property.  *Id.* at 9.  According to Appellant, Plaintiffs failed

to present any documentary evidence of their ownership of the Subject Premises. *Id.* at 10.

Plaintiffs counter that the trial court properly determined their ownership of the Subject Premises based upon the October 28, 2020, deed from Brian A. Johnson and Martha P. Johnson (the Johnsons) to Plaintiffs (the Gross/Nestico Deed). Appellees' Brief at 13. Plaintiffs assert that the trial court properly concluded that Plaintiffs established their chain-of-title to the Subject Premises from the Gross/Nestico Deed "back through 1868, either by referencing the instrument number of deed book and page number or providing a copy of the property record itself." *Id.*

We acknowledge that

[t]he plaintiffs' burden in an action in ejectment at law is clear: they must establish the right to immediate exclusive possession. Recovery can be had only on the strength of their own title, not the weakness of defendant's title. The crux of an ejectment action, therefore, rests with the plaintiffs' ability to identify, by a preponderance of the evidence, the boundaries of a parcel of land to which they are out of possession but for which they maintain paramount title.

*Doman v. Brogan*, 592 A.2d 104, 108 (Pa. Super. 1991) (citations omitted).

When interpreting deeds, "the court's 'primary object must be to ascertain and effectuate what the parties intended.'" *Mackall v. Fleegle*, 801 A.2d 577, 581 (Pa. Super. 2002) (quoting *Brookbank v. Benedum-Trees Oil Co.*, 131 A.2d 103, 107 (Pa. 1957)). The following rules of construction apply:

(1) the nature and quantity of the interest conveyed must be ascertained from the instrument itself and cannot be orally shown in the absence of fraud, accident or mistake[,] and we seek to ascertain not what the parties may have intended by the language but what is the meaning of the words; (2) effect must be given to all the language of the instrument and no part shall be rejected if it can be given a meaning; (3) if a doubt arises concerning the interpretation of the instrument it will be resolved against the party who prepared it; (4) unless contrary to the plain meaning of the instrument, an interpretation given it by the parties themselves will be favored; (5) to ascertain the intention of the parties, the language of a deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

*Mackall*, 801 A.2d at 581 (quoting *Brookbank*, 131 A.2d at 107 n.6) (quotation marks and ellipses omitted)). As with any question of law, we review the trial court's construction of a deed *de novo*.

*Murphy v. Steve Karnek*, 160 A.3d 850, 858-59 (Pa. Super. 2017).

Appellant's claim to title relies, in the first instance, on the 1995 quitclaim deed from APU. "[A] quitclaim deed only conveys the grantor's interest in or title to the property described." *Southall v. Humbert*, 685 A.2d 574, 580 (Pa. Super. 1996). "The distinguishing characteristic of a 'quitclaim deed' is that it is a conveyance of the grantor's interest in a property, rather than of the property itself." *PA Energy Vision, LLC v. S. Avis Realty, Inc.*, 120 A.3d 1008, 1011 n.1 (Pa. Super. 2015). "One who receives a quit-claim [] deed to a property must proceed with caution if he seeks to possess himself of that property." *Southall*, 685 A.2d at 580

(quoting **Greek Catholic Congregation of Borough of Olyphant**, 32 A.2d 299, 300 (Pa. 1943)).

In their complaint, Plaintiffs claim ownership of the Subject Premises by means of the Gross/Nestico Deed, which described the conveyed property, which included the Subject Premises, as follows:

> **ALL THAT CERTAIN** piece, parcel and lot of land situate in the Township of Main, County of Columbia and State of Pennsylvania, bounded and described as follows, to-wit:
>
> BEGINNING at a point in the PA. State Highway Route 339, also known as Mainville Drive, leading from Mainville to Shumans; THENCE South 37 ¾ degrees East. 6.4 perches to an iron bolt in Said State Highway; THENCE South 35 ¾ degrees East, 16.7 perches to low water mark in the Catawissa Creek; THENCE along said Catawissa Creek, South 77 ¾ degrees East, 18 perches to Scotch Run; THENCE along the course of State Highway Route No. 339, also known as Mainville Drive, and in line of land now or formerly of Orval Wynings and Liva Wynings, his wife; THENCE along land now or formerly of the said Orval Wynings, *et ux.*, North 68 degrees East, 16 perches to an iron pin; THENCE by the same, South 55 degrees East, 3.1 perches to a marked Sycamore; THENCE by the same, North 53 ¼ degrees East, 16.75 perches to a marked pine; THENCE by the same, North 86 ½ degrees East, 8.1 perches to a stone in line of land formerly of John Knecht, now or late of Orval Wynings, *et ux.*; THENCE by the same, North 11 ½ degrees West, 92 perches to a stone pile monument in line of land now or formerly of the Pennsylvania Game Commission; THENCE now or formerly along said State Game Land, South 85 degrees 45 minutes West, 38.85 perches to a stone pile monument in line of land now or formerly of the said Orville Robbins; THENCE, along land now or formerly of the said Orville Robbins, South 14 ½ degrees East, 71.5 perches to a concrete monument in line of land now or formerly of Carl Whalen and Onita Whalen, his wife; THENCE now or formerly along said Whalen Land, South 45 ¾ degrees WEST, 21.5 perches to a stone in said Pa. State Highway Route No. 339, also known as Mainville Drive, the place of the BEGINNING.

> CONTAINING 25 ¼ acres of land, upon which is erected a 2 ½ story frame dwelling house and outbuildings.
>
> **UNDER AND SUBJECT TO** portion of legal right-of-way of Pennsylvania State Route 339, also known as Mainville Drive.

Complaint, 4/13/23, Exh. A (Columbia County Instrument No. 202008459, recorded on October 28, 2020). The Gross/Nestico Deed further described the parcel as

> **BEING THE SAME** premises which Robert K. Batting and Dorothy I. Batting, his wife, by deed dated July 13, 1968[,] and recorded July 16, 1968[,] in the Office of the Recorder of Deeds in and for Columbia County in Deed Book 34, at Page 310, granted and conveyed unto Brian A. Johnson and Martha P. Johnson, his wife, grantors herein.

Complaint, 4/13/23, Exh. A (emphasis in original). Although the deed states the conveyance is subject to the Commonwealth of Pennsylvania's easement for a "channel change," **the Subject Premises is not excluded from the conveyance. *See id.*** Similarly, the deed expressed no reservation of rights with regard to the Subject Premises.

Plaintiffs also attached, as Exhibit C to their complaint, Appellant's 1995 quitclaim deed from APU to Broyan and Appellant, as husband and wife. *Id.* Exh. C. The quitclaim deed conveyed "all right, title and interest of the Grantor of, in and to the premises described in Schedule "A", attached hereto and made a part hereof." *Id.* Schedule A described the conveyed interest, in relevant part, as follows:

> **ALL THAT PARCEL** of land, sixty (60) feet wide, situate in the Township of Main, County of Columbia, Commonwealth of Pennsylvania, being all of the right, title and interest of the

- 9 -

Grantor herein and to all those pieces or parcels of land and premises, easements, rights-of-way and any other rights of any kind whatsoever appurtenant thereto or used in conjunction therewith on and along that property of the Catawissa Branch of the former Pennsylvania Railroad Company (predecessor of said Grantor), described as follows:

**BEGINNING** at a line extended across the right-of-way of said Catawissa Branch through a point in the centerline thereof at Railroad Valuation Station 1412+95; thence extended in a Northwesterly direction along the centerline of said railroad a distance of 710 feet, more or less, to a line extended across the right-of-way of said Catawissa Branch through a point in the centerline thereof at Railroad Valuation Station 104+85, more or less, being the Place of Ending.

**THE HEREINABOVE** described parcel being the same property conveyed from Francis Flemming to [DH] (predecessor of said Grantor) by deed dated May 11, 1877, and being described in said deed as follows:

> A strip or piece of the said land being through and upon his farm which said farm or piece of land is bounded on the East by lands of Abraham Knecht, on the West by lands of George Ganster, on the North by lands of Shermans heirs, and on the South by lands late of Amos Rellenhouse. The said Strip so occupied being seven hundred and ten feet in length, more or less, and sixty feet in width as now located, occupied and used by the said Railroad Company

*Id.* (emphasis in original) (Deed Book Volume 606, pg. 349). The Gross/Nestico deed is attached to Plaintiffs' motion for summary judgment, as well as the expert report of Attorney Davidson. Attorney Davidson provided the abstract of title from the Gross/Nestico deed dated back to 1868. Motion for Summary Judgment, 6/12/24, Exh. A (Exhibit A to Expert Report).

Plaintiffs thus claimed ownership of the Subject Premises by means of the October 26, 2020, Gross/Nestico Deed. Motion for Summary Judgment,

- 10 -

6/12/24, ¶ 20. Plaintiffs averred the Gross/Nestico Deed describes a continuous boundary, without any exception or reservation for use by a railroad. *Id.*, ¶ 25.

Appellant countered, in her answer to the motion for summary judgment (Answer), that her chain-of-title unambiguously shows ownership of the Subject Premises by her predecessors-in-title until October 7, 1995, when it was conveyed to Appellant and Broyan.[4] Answer, 8/16/24, ¶ 51(1). Appellant attached to her Answer the expert report of Franklin E. Kepner, Esquire (Attorney Kepner). *See id.* Exh. A. In his expert report, Attorney Kepner explained, that in 1877, Francis Fleming conveyed the Subject Premises to DH. *Id.*, Exh. A, at 3. As Attorney Kepner explained,

> [t]he supporting documents for this assertion was an alleged and unverified and undated ledger obtained from APU and a transcribed release between Francis Flemming and DH dated May 11, 1877. **The first document lists the Fleming property as being granted to DH by a deed of condemnation on May 11, 1877**[,] **which may explain why it is not of record in the now normal practice of deed conveyance.** This event appears to be by Court Order. Additionally, the notation "Revised Ledger" does not apply to the Fleming parcel but only to the Knecht parcel as clearly indicated in this document. **The language of the Release of the same date further confirms title to** [] **DH.** Not only does it recite the names of other adjoining landowners as

---

[4] Appellant also appeared to claim title by virtue of adverse possession, alleging she and Broyan "have enjoyed visible, notorious, distinct, exclusive, hostile and uninterrupted possession of the [Subject Premises] since at least 1995." Answer, 8/16/24, ¶ 51(2). However, Appellant's answer, new matter and counterclaims did not aver a cause of action sounding in adverse possession. Rather, Appellant claimed ownership of the property through its chain of title. Appellant's Answer, New Matter and Counter Claim, 5/19/23, ¶¶ 61, 64-71.

listed on the aforementioned railroad ledger, but it unequivocally states in pertinent part as transcribed by B. Robert Davidson[:]

" … and for myself and any heir, executors, administrators and assigns hereby covenant and agree with the said, [DH] ??? ???[5] Their successors and assigns, that no non-user of the above described piece of land, or any part thereof by the said [DH] or their successor or assigns, or no user occupation or possession thereof or any part thereof by one or ? *any* ? heirs, executors, administrators or assigns, whether by residence, cultivation, enclosure, or otherwise for a period of time whatever, whether for twenty-one years, or longer SHALL IN ANY MANNER AFFECT THE RIGHT OR TITLE OF THE SAID [DH] THEIR SUCCESSORS AND ASSIGNS TO THE ENTIRE AND EXCLUSIVE POSSESSION OF THE SAME." [] It would be noted that the description of the property contained in the release is an exact description of this parcel.

*This clearly would serve not only as a release between the parties but at least as an easement in gross running with the land even though not recorded with the Recorder of Deeds*. Since this was part of a public judicial action it would serve as constructive notice to the world. This language is evidence of the right and title to the entire and exclusive possession by [] DH. This is the language found in a fee simple deed and implies the ongoing nature of a fee simple title until such time as the property may be conveyed….

*Id.* (capitalization emphasis in original retained; bold emphasis in original omitted; italicized emphasis and footnote added).

In her Answer, Appellant disagreed with the report filed by Plaintiff's expert, Attorney Davidson:

It is admitted a supplemental report was prepared. It is denied that the report is correct. … The Plaintiffs have presented no documentary evidence whatsoever to show that they ever had title

---

[5] The Attorney Kepner inserted question marks to denote the original hand-written document's illegibility.

to the [Subject Premises]. In fact, [] Plaintiffs admit in their own expert's report, that the land from BRHM … to the Plaintiff[s] refers to property one (1) mile to the west of the [Subject Premises]. It is admitted this report demonstrates that [Appellant] should prevail in this action, particularly because the Plaintiffs' expert states that [Appellant] should prevail, and in addition, [Appellant] and her family have walked the [Subject Premises] openly, continuously, and hostilely since 1995.

Answer, 8/16/24, ¶ 17.

Thus, Plaintiffs claimed ownership by virtue of the recorded Gross/Nestico deed, which showed no reservation or easement for the Subject Premises. Appellant claimed ownership through the unrecorded Release, an unrecorded ledger mentioning a deed of condemnation dated May 11, 1877, and a quit claim deed.

Our Supreme Court has long held that "[a]n unrecorded deed is null and void as against a *bona fide* purchaser of the same land for a valuable consideration, and nothing can save it but placing it on record before the second purchaser gets his deed there." ***Hetherington v. Clark***, 30 Pa. 393, 395, 1858 Pa. LEXIS 89, * 6 (Pa. 1858). As Madame Justice Donohue explained, in her in dissenting opinion in ***MERSCORP, Inc. v. Del. Cty.***, 207 A.3d 855 (Pa. 2019):

> **Beginning with its earliest laws, Pennsylvania required conveyances of land to be recorded.** In 1682, William Penn and other influential Pennsylvanians compiled a series of laws from England with which they agreed. One such law was referred to in England as the Statute of Enrollments, which required "a deed of bargain and sale of a freehold interest" to be "enrolled" either in a court of record at Westminster or in other named public offices. History of the United States' system of conveyancing, 1 Patton and Palomar on Land Titles § 3 (3d ed.). The failure to do

so within six months of the conveyance rendered the deed void. *Id.* However, the Statute of Enrollments revealed itself to be largely ineffectual, as it "was evaded by the adoption of the conveyance by lease and release." *Appeal of Luch*, 44 Pa. 519, 523 (1862) (citing William Blackstone, Commentaries on the Laws of England, Vol. II, 342 (1753)).

The Pennsylvania version of this law attempted to remedy the shortcomings of the English law, thus requiring that "Conveyances of Land ... shall be Enrolled or Registered in the public[] Enrollment-Office of the said Province, within the space of two Months next after the making thereof, else to be void in Law." XX Pa. Stat. 321-22 (1682) ….

*MERSCORP*, 207 A.3d at 875 (Madame Justice Donohue, Dissenting).

The General Assembly established the Office for Recording of Deeds in 1715. *See* Act of May 28, 1715, 1 Sm.L. 94, Ch. 208 (stating land conveyances "may be recorded in the said office."). This act provided that a deed, mortgage or defeasible deed in the nature of mortgages was void unless recorded within six months after the conveyance. *Id.*, 1 Sm.L. 94, § 8.

The General Assembly amended that act in 1775, providing as follows:

> [**A**]**ll deeds and conveyances**, which, from and after the publication hereof, shall be made and executed within this province, of or concerning any lands, tenements or hereditaments, in this province, or whereby the same may be any way affected in law or equity, … **shall be recorded in the recorder's office** where such lands or hereditaments are lying and being, within six months after the execution of such deeds or conveyances; **and that every such deed and conveyance, that shall at any time after the publication hereof be made and executed, and which shall not be proved and recorded as aforesaid, shall be adjudged fraudulent, and void against any subsequent purchaser or mortgagee for valuable consideration, unless such deed or conveyance be recorded as aforesaid**, before the proving and recording of the deed

- 14 -

or conveyance under which such subsequent purchaser or mortgagee shall claim.

Act of March 18, 1775, 1 Sm.L. 422 (emphasis added). As Justice Donohue explained,

[by this statute, t]he General Assembly stated its intent to stop conveyances from occurring differently and in secrecy and also to protect subsequent purchasers and mortgagees from fraudulent conduct by requiring a single, transparent and public record of ownership and interests in land through the enactment of this statute. **This statute served to achieve both aims by making clear that the public recording system was mandatory and by providing that unrecorded conveyances are inferior to recorded conveyances held by subsequent purchasers of the same land**. *See Souder v. Morrow*, 33 Pa. 83, 84 (1859) (stating that the Act of 1775 requires the recording of titles to land "for the public good" and should be adhered to "because there is safety in so doing").

The following year, the Office of the Recorder of Deeds was included as a mandatory county office in Pennsylvania's original Constitution, *see* PA. CONST. § 34 (1776), and it remains so today. PA. CONST. art IX, § 4. ….

**The mandatory recording provision of the Act of 1775 was modified only slightly in 1883 (and never again since) to provide that recording must occur within ninety days after the execution of the deed or conveyance, lessening the timeframe from the previously allowed six months.** *See* Act of May 19, 1893, P.L. 108, No. 61, § 1. The preamble that was included in the Act of 1775 remained included in the amended version of the statute. The substantive language of the statute (without the preamble) appears in Title 21 of Purdon's Statutes under section 444. *See* 21 P.S. § 444; *see also infra*, note 10.

The Generally Assembly added section 351 to Pennsylvania's roster of recording laws in 1925. Section 351 is *in pari materia* — it "relate[s] to the same persons or things or to the same class of persons or things" — to several other recording statutes appearing in Title 21, including sections 356, 441, 444, and 621, as each of these statutes address the recording of deeds, conveyances

and/or mortgages. *See* 1 Pa.C.S. § 1932. Our rules of statutory interpretation direct that we must, to the extent possible, construe these statutes as one. *Id.*

Beginning with section 444, it contains substantially similar language to section 351, as both provide that deeds and conveyances "shall be recorded" in the recorder's office, and both also include a provision stating that any deed or conveyance not so recorded is void as to a subsequent *bona fide* purchaser or mortgagee for value who has so recorded. *Compare* 21 P.S. § 351 *with id.*, § 444….

… [**S**]**ection 441 states that for any deed or conveyance that predated the recording act of 1775 (current section 444), it was "the duty" of the person who claimed the interest in land "to have the same recorded … in the manner now provided by law, within two years from the date thereof." 21 P.S. § 441. ….**

*MERSCORP, Inc*, 207 A.3d at 876-77 (footnote and original emphasis omitted; emphasis added).

Thus, to be effective against all subsequent *bona fide* purchasers of the Subject Premises, DH was required to record its easement/release/ledger/condemnation deed. The record here discloses no recorded conveyance of the Subject Premises prior to Appellant's quitclaim deed. Appellant's claim of ownership, through a quitclaim deed, is unavailing where, as here, Plaintiffs established title to the Subject Premises. *See Southall*, 685 A.2d at 580. Accordingly, Appellant's first issue merits no relief.

In her second issue, Appellant argues that the trial court violated the *Nanty-Glo* rule in entering summary judgment in favor of Plaintiffs. Appellant's Brief at 11. According to Appellant, the report of Appellant's expert

includes statements that are testimonial in nature. ***Id.*** Appellant argues the trial court "simply adopted the report of Plaintiffs' first attorney[, Attorney Davidson,] who became their expert." ***Id.*** at 12. Appellant does not identify any particular objectionable statement in the expert report.

Our Supreme Court has recognized that,

> [i]n determining the existence or non-existence of a genuine issue of material fact, courts are bound to adhere to the rule of ***Nanty-Glo*** …, which holds that a court may not summarily enter a judgment where the evidence depends upon oral testimony….

***Resolution Tr. Corp. v. Urban Redevelopment Auth.***, 638 A.2d 972, 975 (Pa. 1994) (citation omitted). "Testimonial affidavits of the moving party or his witnesses, not documentary, even if uncontradicted, will not afford sufficient basis for the entry of summary judgment, since the credibility of the testimony is still a matter for the jury." ***Penn Center House, Inc. v. Hoffman***, 553 A.2d 900, 903 (Pa. 1989); ***accord Scalice v. Pa. Emps. Benefit Tr. Fund***, 883 A.2d 429, 432 n.5 (Pa. 2005).

Our review discloses that in her Answer to Plaintiffs' summary judgment motion, Appellant expressed no objection to the Attorney Davidson's expert report based on the ***Nanty-Glo*** principle.[6] "[A]rguments not raised initially before the trial court in opposition to summary judgment cannot be raised for the first time on appeal." ***Krentz v. CONRAIL***, 910 A.2d 20, 37 (Pa. 2006)

---

[6] It appears from the record Appellant filed no brief opposing Plaintiff's motion for summary judgment.

(citation omitted). In *Krentz*, the Supreme Court deemed the plaintiffs' *Nanty-Glo* argument waived, "in light of their failure to present it to the trial court in their Brief in Opposition to Conrail's Motion for Summary Judgment." *Id.* Here, similarly, Appellant failed to raise a *Nanty-Glo* issue before the trial court. Accordingly, it is waived on appeal. *See id.*; *see also* Pa.R.A.P. 302(a) (stating an issue cannot be raised for the first time on appeal).

Finally, Appellant argues that "if the Court believes that testimonial affidavits can be considered … then the [trial court] should have considered Appellant's expert report." Appellant's Brief at 13. Appellant argues that her expert "stated that the chain of title to the [Subject Premises] is clear, unambiguous and shows ownership by [DH] by deed dated May 1877." *Id.*

As stated above, we concluded Appellant waived her *Nanty-Glo* issue. Moreover, as stated by the trial court,

> [t]he sum total is that Plaintiffs have established good and marketable title to the Subject Premises and [Appellant] has established nothing but the 1995 quitclaim deed from [APU]. …

Trial Court Opinion, 8/21/24, at 4. Appellant's claim of title relied upon unrecorded documents. Plaintiffs' claim, in contrast, rested upon a recorded deed with an established chain-of-title. Appellant's argument that the trial court relied upon testimonial evidence is not supported by the record and therefore, lacks merit. Accordingly, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/27/2025